﻿Citation Nr: AXXXXXXXX
Decision Date: 02/25/19 Archive Date: 02/25/19

DOCKET NO. 180912-1527
DATE: February 25, 2019

ORDER

Readjudication of the claim for service connection for bilateral carpal tunnel syndrome is not warranted.

Service connection for bilateral hearing loss is denied.

Service connection for tinnitus is granted.

FINDINGS OF FACT

1. New and relevant evidence was not received after the September 2015 denial to the issue of entitlement to service connection for bilateral carpal tunnel syndrome.

2. The preponderance of the evidence of record is against finding that the Veteran has had bilateral hearing loss at any time during or approximate to the pendency of the claim.

3. The Veteran has experienced symptoms related to tinnitus since his separation from service.

CONCLUSIONS OF LAW

1. The criteria for readjudicating the claim for service connection for bilateral carpal tunnel syndrome have not been met. Veteran’s Appeals Improvement and Modernization Act, Pub. L. No. 115-55, § 5108, 131 Stat. 1105 (2017).

2. The criteria for service connection for bilateral hearing loss have not been met. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. §§ 3.303, 3.304, 3.07, 3.309, 3.385, 4.85. 

3. The criteria for service connection for tinnitus have been met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.07, 3.309, 3.385, 4.85. 

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Veteran chose to participate in VA’s test program RAMP, the Rapid Appeals Modernization Program. This decision has been written consistent with the new AMA framework.

The Veteran served on active duty with the Air Force from April 1988 to October 1994. He served on active duty with the Army from September 1997 to April 1998. He also has Army National Guard service from September 1995 to February 1996. 

The Veteran selected the Direct Review lane when he submitted the RAMP election form. Accordingly, the August 2018 RAMP rating decision considered the evidence of record as of the date VA received the RAMP election form. The Veteran timely appealed his RAMP rating decision to the Board and requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ). 

The new and material evidence issue regarding bilateral carpal tunnel syndrome has been recharacterized to reflect the new evidentiary standard under the AMA. Pub. L. No. 115-55, § 5108. 131 Stat. 1105, 1109. 

NEW AND RELEVANT EVIDENCE

1. Whether new and relevant evidence was presented to warrant readjudicating the November 2014 claim for service connection for bilateral carpal tunnel syndrome.

The Veteran contends that he developed bilateral carpal tunnel syndrome by working on computers while serving in the military. 

VA will readjudicate a claim if new and relevant evidence is presented or secured. AMA, Pub. L. No. 115-55, § 5108, 131 Stat. 1105, 1109. “Relevant evidence” is evidence that tends to prove or disprove a matter in issue. AMA, Pub. L. No. 115-55, § 101(35), Stat. 1105, 1105.

The questions in this case are whether the Veteran submitted evidence after the prior final denial of his claim for service connection for bilateral carpal tunnel syndrome in the legacy system, and if so, whether that evidence is new and relevant to his claim. 

The Board finds that the Veteran did not submit any new or relevant evidence after the prior final rating decision in the legacy system. Therefore, readjudication of the claim is not warranted. 

SERVICE CONNECTION

Generally, service connection may be established if the evidence demonstrates that a current disability resulted from a disease or injury incurred in or aggravated by active duty service. 38 C.F.R. § 3.303. To that end, service connection may be established for any disease diagnosed after discharge, when all the evidence, including that pertinent to the period of service, establishes the disease was incurred during active duty service. 38 C.F.R § 3.303 (d).

In order to prove service connection, there must be competent and credible evidence of (1) a current disability; (2) an in-service incurrence or aggravation of a disease or injury; and (3) a nexus or link between the current disability and the in- service disease or injury. See Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

Additionally, for Veterans who have served 90 days or more of active service during a war period or after December 31, 1946, certain chronic disabilities, such as sensorineural hearing loss or psychoses, are presumed to have been incurred in service if manifest to a compensable degree within one year of discharge from service. 38 U.S.C. §§ 1101, 1112, 1137; 38 C.F.R. §§ 3.307, 3.309.

Alternatively, when a disease at 38 C.F.R. § 3.309 (a) is not shown to be chronic during service or the one-year presumptive period, service connection may also be established by showing continuity of symptomatology after service. See 38 C.F.R. § 3.303 (b). The use of continuity of symptoms to establish service connection is limited only to those diseases listed at 38 C.F.R. § 3.309 (a) and does not apply to other disabilities which might be considered chronic from a medical standpoint. See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013).

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990). 

2. Entitlement to service connection for bilateral hearing loss 

The Veteran contends that he has bilateral hearing loss due to exposure to acoustic trauma while serving in both the Air Force and Army. 

The AOJ had not found that the Veteran had an event or injury in service as there is a low probability of exposure to hazardous noise based on the Veteran’s military occupational specialty in personnel in the Air Force and administrative duties in the Army. 

The question in this case is whether the Veteran has a current disability sufficient for VA purposes. 

The threshold for normal hearing is from 0 to 20 decibels, and higher threshold levels indicate some degree of hearing loss. Hensley v. Brown, 5 Vet. App. 155, 157 (1993). For the purposes of applying the laws administered by VA, impaired hearing will be considered a disability when the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, 4000 Hertz is 40 decibels or greater; or when the auditory thresholds for at least three of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz are 26 decibels or greater; or when speech recognition scores using the Maryland CNC Test are less than 94 percent. 38 C.F.R. § 3.385.

The Veteran’s private treatment records show an audiometric report from August 2013. On the audiological evaluation, pure tone thresholds, in decibels, were as follows:

 HERTZ 

 500 1000 2000 3000 4000

RIGHT 10 0 0 10 5

LEFT 10 0 5 10 10

Speech audiometry was not tested. 

The Veteran was afforded a VA audiological examination in September 2015. On the authorized audiological evaluation, pure tone thresholds, in decibels, were as follows:

 HERTZ 

 500 1000 2000 3000 4000

RIGHT 5 5 5 10 10

LEFT 5 0 10 10 15

Speech audiometry revealed speech recognition ability of 100 percent in both the right ear and left ear.

The Veteran was afforded an additional VA audiological examination in January 2018. On the authorized audiological evaluation, pure tone thresholds, in decibels, were as follows:

 HERTZ 

 500 1000 2000 3000 4000

RIGHT 10 0 5 10 10

LEFT 10 10 10 10 10

Speech audiometry revealed speech recognition ability of 96 percent in the right ear and 98 percent in the left ear.

The audiometric testing conducted does not show hearing loss sufficient for VA purposes. 38 C.F.R. § 3.385. 

While the Veteran believes he has a current diagnosis of bilateral hearing loss, he is not competent to provide a diagnosis in this case. The issue is medically complex, as it requires the ability to interpret complicated diagnostic medical testing. Jandreau v. Nicholson, 492 F.3d 1372, 1377, 1377 n.4 (Fed. Cir. 2007). Consequently, the Board gives more probative weight to the competent medical evidence.

The Board concludes that the Veteran does not have a current diagnosis of bilateral hearing loss and has not had hearing loss sufficient for VA purposes at any time during the pendency of the claim or recent to the filing of the claim. Romanowsky v. Shinseki, 26 Vet. App. 289, 294 (2013); McClain v. Nicholson, 21 Vet. App. 319, 321 (2007).

3. Service connection for tinnitus is granted

The Veteran contends that his recurrent tinnitus is due to exposure to acoustic trauma while serving in both the Air Force and Army. 

The AOJ found that the Veteran has a current diagnosis of tinnitus based on VA examinations in June 2015 and January 2018 and they found that the Veteran had not had an event or injury in service as there is a low probability of exposure to hazardous noise based on the Veteran’s military occupational specialty in personnel in the Air Force and administrative duties in the Army. 

The question in this case is whether a causal relationship or nexus exists between the Veteran’s tinnitus and his service. 

The Veteran’s service treatment records such multiple complaints for ear discomfort and pain beginning in April 1991. The Veteran complained about ear pain in May 1991, June 1992, January 1993, May 1993, and February 1994 while serving with the Air Force. The VA was unable to locate the Veteran’s Army service treatment records. See Correspondence dated March 2014. 

The Veteran was afforded a VA audiological evaluation in September 2015. The Veteran reported recurrent tinnitus that began in December 1988 while serving at the base post office located next to the C-5 runway on the flight line. The examiner opined that the Veteran has a diagnosis of clinical hearing loss, and his or her tinnitus is at least likely as not a symptom associated with hearing loss. 

The Veteran was afforded an additional VA audiological evaluation in January 2018. The Veteran reported that his recurrent tinnitus began in January 1989 while he was working at the post office in the flight line of a C-5 Squatter and that is when he first noticed the ringing. He described the ringing as intermittent lasting 10 to 15 seconds. The examiner opined that the Veteran’s tinnitus was less likely than not related to his military service. The rationale given for the opinion was the lack of evidence in the file of any complaints of tinnitus or hearing loss during service and the time between service and the date of the evaluation is significant without evidence of any audiology treatment in the intervening years. 

In April 2018 correspondence, the Veteran reported that in December 2014 while deployed in Stuttgart, Germany a civilian threw an M-80 firecracker, which exploded next to his left ear. The Veteran contended that he could not hear anything after that except ringing in both ears for more than 12 hours after the blast. He believes this contributed to his hearing loss and tinnitus. Additionally, he reported that he worked in the post office next to the flight line for C-5 aircraft. He said it was an extremely loud environment and planes took off and landed throughout the day with a loud high pitch noise. The Veteran contends that he reported ringing in his ear while on active duty at Travis AFB. He continued to have hearing issues and ringing in both ears while on active duty there. He added that while at Ft. Benning, he experienced ringing in his ears after he got M-16 certified and night fire certified. He believes that the exposure to loud noises on the firing range and elsewhere also contributed to hearing loss and tinnitus.

The Veteran has competently and credibly stated that he began experiencing tinnitus in service. He has competently and credibly explained to the VA examiners that his tinnitus symptoms began during service and they have continued since that time. Furthermore, his service treatment records from the Air Force show that he complained of ear pain and discomfort on multiple occasions. 

The Board notes that tinnitus is a subjective disability that cannot be identified through objective testing; as such, the Board defers to the Veteran’s lay statements to find that his tinnitus began in service. See Charles v. Principi, 16 Vet. App. 370 (2002). 

While the Board notes the negative medical opinion in this case, due to the inherently subjective nature of tinnitus, the Veteran’s credible statements as to the onset of his symptoms are found to be at least as probative as the medical opinion, and any reasonable doubt is resolved in the Veteran’s favor. See Gilbert, supra. Accordingly, service connection for tinnitus is granted. 

 

L. M. BARNARD

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD M. Hartford, Associate Counsel